# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

October 27, 2025

**By CM/ECF**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Tarek Bazrouk*
             25 Cr. 203 (RMB)

Dear Judge Berman,

    I write to respond briefly to the Government's sentencing submission in the above-captioned case, which seeks a sentence of 36 months' imprisonment—twice the maximum of the parties' agreed-upon guidelines range and three times greater than the sentence recommended by United States Probation. As set forth here and in the defense's opening submission, application of the 18 U.S.C. § 3553(a) factors to the totality of Tarek's circumstances militates against an upward variance. In particular, an upward variance would flatly violate 18 U.S.C. § 3553(a)(6)'s admonishment to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Accordingly, because none of the circumstances surrounding either the offense or Tarek's history and characteristics justifies an above-guidelines sentence, the Court should reject the Government's request for an upward variance.

    *First*, the Government's submission calls into question Tarek's acceptance of responsibility, suggesting that because defense counsel's submission fails to repeatedly refer to the victims' Jewish faith, Tarek is somehow minimizing his conduct. This could not be further from the truth. As discussed in the defense submission, Tarek almost immediately engaged in good faith plea negotiations with the Government and pleaded guilty within weeks of being charged—an unusually expedited timeline for the resolution of a federal criminal case. And, at his plea, Tarek unequivocally and repeatedly admitted to targeting each of the three victims because each appeared to be "Jewish or Israeli." PSR at ¶26. Further, in his letter to the Court, Tarek expressed genuine remorse and contrition for his offense, repeatedly repudiating violence and repeatedly acknowledging how his offense harmed his victims, their communities, and his cause. There is absolutely no basis to question Tarek's remorsefulness or sincerity, and there is no basis to question the

seriousness with which Tarek has approached the reverberating harms stemming from his targeting of Jewish people.

*Second*, there is a dearth of offense-specific circumstances suggesting that the stipulated guidelines range fails to adequately account for the seriousness of the offense and the appropriate, just punishment. Perhaps an upward variance would be warranted if the victims were hospitalized or even suffered physical injuries requiring medical attention, but that is not what happened. Significantly, while Tarek readily acknowledges the pain, alarm, and fear his actions caused his Jewish victims and their community, none of them is even seeking restitution. Further, an upward variance might be appropriate if Tarek possessed, brandished, or used a weapon in connection with the physical assaults. But again, that is not what happened here, and the weapons found in Tarek's apartment—which did not include any actual firearms, contrary to the Government's suggestion—were recovered from a locked safe, and not from a coat pocket or vehicle. Simply put, the knives and brass knuckles recovered from Tarek's bedroom had nothing to do with the assaults and do not support deviating from the guidelines.

Similarly, all the harm stemming from Tarek's past text messages expressing anti-Jewish sentiment is adequately accounted for in the aggregate guidelines range calculated across the three assaults to which he admitted in connection with his plea.[1] Perhaps if the Government could point to a single message, recorded jail call, or letter since Tarek's detention suggesting he continues to espouse these views, then a variance might be warranted. But such evidence does not exist because Tarek has clearly learned a powerful and important lesson about the consequences of hate-inspired violence and hate speech through the terrifying six months he has already served at MDC Brooklyn.

*Third*, the Government's outright dismissal of Tarek's age and youthfulness as mitigating factors is disturbing and flies in the face not just of social science and neuroscience research, but also of the practical findings of the Sentencing Commission and the firsthand experiences of this Court as a pioneer in court-involved supervised release. Tarek was a teenager when he committed his first assault and was barely 20 years old for the other two. The overwhelming weight of the applicable literature surrounding adolescent brain development, which is discussed at length in the defense's opening submission, concludes that brain development and impulse control continue well into a person's mid-20s. Put differently, there is no switch that gets flipped when a person turns 18 that magically enhances their maturity or frontal lobe functioning, as the Government's

---

[1] The defense submits that the other text messages cited in the Government's submission related to Tarek's musings about designated terrorist organizations like Hamas or Hezbollah is protected, First Amendment speech that is not appropriate fodder for an upward variance. *See generally Holder v. Humanitarian Law Project*, 561 U.S. 1, 31-32 (2010) (independent advocacy for a designated terrorist organization "that might be viewed as promoting the group's legitimacy" is protected speech).

2

argument suggests. Nor is it appropriate for the Government to argue that increased jail time is necessary for rehabilitative purposes "so that [Tarek] will be released to the community as a more mature and developed adult." Gov't Memo at 19. In fact, this argument plainly violates the Supreme Court's admonishment in *Tapia v. United States*, 564 U.S. 319 (2011), that the Sentencing Reform Act precludes district courts from lengthening a defendant's prison term to promote rehabilitation. However, the Court can—and should—take Tarek's rehabilitation into account when fashioning the terms of Tarek's supervised release, as "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).

*Fourth*, a 36-month sentence would indisputably create an unwarranted sentencing disparity between Tarek and similarly situated defendants—*i.e.*, those accused of hate crimes and/or acts of violence at protests. Indeed, the defense is aware of only one other case in the SDNY with similar facts to this one, *United States v. Saadah Masoud*, No. 22 Cr. 359 (DLC) (S.D.N.Y.). There, the defendant was accused of assaulting three different individuals on three different occasions (at or around protests) because of their perceived Jewish faith and/or Israeli national origin, and one of the victims required medical treatment at a hospital. The defendant was initially released on bail, but he was remanded after being abusive to his pretrial officers and incurring numerous violations. At sentencing, Judge Cote agreed with the parties' guidelines calculation of 18 to 24 months' imprisonment and sentenced the defendant to the bottom of the guidelines—18 months.[2] Notably, the Government requested a guidelines sentence in that case and did not seek an upward variance.

Sentencing Tarek to a term of imprisonment two times greater than what the defendant in *Masoud* received would plainly violate 18 U.S.C. § 3553(a)(6). None of the victims in Tarek's case required medical attention, let alone a trip to the hospital, unlike one of the victims in *Masoud*. The defendant in *Masoud* also expressed a lack of remorse following his arrest. According to the Government, when the defendant in *Masoud* was arrested, he boldly stated, "All this for a Jew?" and he refused to be supervised by a pretrial officer with an ostensibly Jewish name. The defendant in *Masoud* also admitted to threatening a perceived government witness. *See Masoud*, 22 Cr. 359 (DLC), at ECF No. 42 at 11 (sentencing transcript). There is no comparable, post-offense aggravation present in this case and certainly no basis to impose a sentence double that imposed by Judge Cote in *Masoud*.

In addition to *Masoud*, the defense brings to the Court's attention the sentences imposed in the Eastern District of New York against two licensed attorneys who prepared Molotov cocktails, brought them to a Black Lives Matter

---

[2] The Government erroneously stated that the sentence imposed in *Masoud* was at the "top of the Guidelines range." Gov't Memo at 21.

protest in May of 2020, and threw one of the makeshift bombs at an NYPD vehicle, setting it ablaze. One of the attorneys, Colinford Mattis, who had been an associate at Pryor Cashman, was sentenced to a year and a day, and the other attorney, Urooj Rahman, a public interest housing rights lawyer, was sentenced to 15 months. In both cases, the Government sought sentences between 18- and 24-months' imprisonment. *See* David Thomas, *Judge sentences second New York lawyer in Molotov cocktail case*, Reuters (Jan. 26, 2023, 7:28 PM EST), available at: https://www.reuters.com/legal/judge-sentences-second-new-york-lawyer-molotov-cocktail-case-2023-01-27/. In another Eastern District of New York case, *United States v. Tiffany Harris*, 20 Cr. 128 (E.D.N.Y.), the defendant was alleged with having committed three separate anti-Semitic attacks on Orthodox Jewish people and initially charged with having committed hate crimes. The U.S. Attorney's Office ended up offering Ms. Harris a deferred prosecution agreement, conditioned on intensive mental health treatment. Ms. Harris successfully completed the 18-month deferred prosecution term and all charges against her were dismissed

Nothing about Tarek's case suggests he deserves a sentence two to three times greater than the sentences imposed on Mattis and Rahman. Unlike Tarek, who was just emerging from being a teenager at the time of his offenses, Mattis and Rahman were older, wiser, licensed attorneys with competitive jobs and serious family responsibilities. Both attorneys plainly knew better than to show up at a protest armed with makeshift explosives, and they both knew full well that their actions would carry stiff consequences. 18 U.S.C. § 3553(a)(6) would be rendered meaningless if Tarek were sentenced to a term of imprisonment substantially greater than the terms imposed on Mattis, Rahman, and Masoud, as the Government urges.[3]

*Fifth*, the Government's emphasis on general deterrence completely misses the mark. As the defense emphasized in its opening submission, and as the

---

[3] The two out of state cases the Government cites in support of its § 3553(a)(6) argument are clearly distinguishable from this case. In *United States v. Eric Lin*, the defendant was 35 years old and sent more than 150 pages of death threats and other violent messages to a woman who worked at a South Florida restaurant he frequented. The defendant used multiple accounts to send the abusive death threats and did not appear to express any remorse. *See* Phil Helsel, *Man sentenced to five years for online threats to kill woman, Latinos*, NBC News (June 25, 2020, 10:40 PM EDT), available at: https://www.nbcnews.com/news/us-news/man-sentenced-5-years-online-threats-kill-woman-latinos-n1232197. And in *United States v. Nathan Weeden*, the 23-year-old defendant refused to accept responsibility for vandalizing a synagogue in Michigan's Upper Peninsula and was sentenced to 26 months' imprisonment *after trial*. He was also a member of a notorious white supremacist group called "The Base," which dubbed Weeden's plan "Operation Kristallnact," a term in reference to events that took place on Nov. 9-10, 1938, in which German Nazis murdered Jews and destroyed their homes, synagogues, schools and businesses. *See* Brandon Chew, *Upper Peninsula man sentenced to 26 months for vandalism at synagogue*, CBS News Channel 3 (June 4, 2024, 1:21 PM EST), available at: https://wwmt.com/news/state/upper-peninsula-man-sentenced-to-26-months-for-vandalism-at-synagogue. Given the obvious differences between these cases and Tarek's, they are clearly poor lodestars for fashioning an appropriate sentence.

4

Government effectively concedes by omission, there is no data whatsoever suggesting that increased punishment promotes general deterrence. To the contrary, general deterrence is achieved through the certainty in being caught and prosecuted.

Here, that goal has been achieved several times over as thousands of people are familiar with Tarek's case and are on crystal clear notice that they will be arrested and prosecuted to the fullest extent of the law for assaulting anyone based on their perceived religion, Jewish or otherwise. That thousands of people have signed a petition in support of Tarek hardly detracts from this conclusion. Indeed, the petition itself makes clear that the people who signed it support Tarek and condemn his actions, and they have publicly aligned themselves with holding Tarek accountable to the terms of his supervised release. If anything, the petition creates another powerful layer of accountability for Tarek, who faces not only another stint in jail if he violates his release conditions, but also the disappointment and criticism of the thousands of people who have publicly affirmed their commitment to his rehabilitation.

In arguing otherwise, the Government emphasizes that some groups and/or individuals have labeled Tarek as a "political prisoner" and sought to turn him into a cause célèbres on Instagram and other social media platforms. But as illustrated by their letters to the Court, neither Tarek, nor his family, nor his friends endorse such a view. Quite the opposite, all the letters appended to the defense submission from Tarek's family and friends condemn and repudiate his conduct without reservation. Imposing a sentence dramatically above the stipulated guidelines range based at all on rhetoric and sloganeering from random social media users would be antithetical to § 3553(a)'s core tenets and precepts and would unfairly punish Tarek for statements made by others well beyond his control.

For the foregoing reasons and for those contained in the defense's opening submission, a guidelines sentence is appropriate.

Respectfully submitted,

Andrew John Dalack, Esq.
Assistant Federal Defender, SDNY
(646) 315-1527

Cc:   AUSA Samuel Adelsberg
      AUSA James Ligtenberg

5